UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| ALEXIS MASCHMEIER, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Case No. 22-cv-00315-RMI<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 18 |

This case involves an action by the parents and grandmother of a deceased infant against the United States, a medical center, and medical staff[1] for (1) wrongful death (titled "professional negligence – medical malpractice"); (2) negligent infliction of emotional distress ("NIED") upon a direct victim, the Plaintiff mother; (4) NIED upon two bystanders, the Plaintiff father and grandmother; (5) "medical and related expenses" as part of a survival action; and (6) loss of consortium. *See Compl.* (dkt. 1) at 5–9.

As to Plaintiffs' two claims for NIED, Defendant United States filed a Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Pl.'s Mot. (dkt. 18). First, Defendant's Motion notes that Plaintiffs' "stand-alone claim for [NIED upon the Plaintiff mother] . . . is subsumed in [Plaintiffs'] professional negligence claims"; therefore, that standalone claim is improper. Def.'s Mot. (dkt. 18) at 4; *see Burgess v. Superior Ct.*, 831 P.2d 1197, 1202 (1992) ("Any negligence during delivery which causes injury to the fetus and resultant emotional anguish to the mother, therefore, breaches a duty owed directly to the mother.").

---

[1] All Defendants with the exception of the United States were voluntarily dismissed on May 31, 2022. *See* Stipulated Dismissal (dkt. 19).

*Burgess v. Superior Ct.*, 831 P.2d 1197, 1202 (1992). Plaintiffs concede this point while requesting "leave of court to amend [the] Complaint to move allegations pled in the second cause of action to the first cause of action." *Pl.'s Response* (dkt. 20) at 2. The court **GRANTS** Plaintiffs' request. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988) (the standard for granting leave to amend is "generous"); *Breier v. N. Cal. Bowling Proprietors' Ass'n*, 316 F.2d 787, 789 (9th Cir. 1963) (even where the request appears in opposition to a motion to dismiss and is not formally tendered). Second, Defendant requests that Plaintiffs' request for prejudgment interest under the Federal Tort Claims Act be struck because such relief is not statutorily available. *See Def.'s Mot*. (dkt. 18) at 1. Plaintiffs again concede; thus, the request for prejudgment interest is hereby **STRICKEN**. *See Pl.'s Resp.* (dkt. 20) at 2.

For the reasons stated below, the Motion to Dismiss is **GRANTED**.

## RELEVANT BACKGROUND

The Complaint states that on October 10, 2019, the Plaintiff mother, forty-one weeks pregnant, arrived at Mad River Community Hospital reporting "decreased fetal movements . . . that day," for which she was admitted and received "Cervidil . . . for labor induction." Compl. (dkt. 1) at 4. During labor, the Plaintiff mother experienced "tachysystole and decelerations," described also as "intermittent late and/or variable late decelerations," yet "Cervidil was not stopped" and "the baby was not urgently delivered." *Id*. Plaintiffs allege "a delay in taking [the Plaintiff mother] to the [o]perating [r]oom from the time the decision had been made to perform [a] C-section to the time she was taken to the [o]perating [r]oom" and a subsequent delay, "as a result of which [the newborn] was delivered hours later." *Id*. at 4–5. Upon performance of a C-section, the newborn was "delivered alive with [an] umbilical cord wrapped around her neck." *Id*. at 5. After thirty-seven minutes of attempted resuscitation, the newborn passed away. *Id*.

As to Plaintiffs' claims for NIED upon a bystander, the Complaint states that the Plaintiff father and grandmother, "who were present during labor and delivery and were aware of the fetal distress and observed the injuries, were grief stricken" and "sustained severe injury to their health, severe emotional stress, shock and other highly unpleasant emotions, causing [] injury and damage . . . ." *Id*. at 7, 8. The Plaintiff father and grandmother "were contemporaneously aware of the

2

injuries and damages sustained by . . . [the Plaintiff mother], who was in labor and under the influence of medication administered by defendants, and . . . [the newborn], who was in distress"; "were aware that [the Plaintiff mother and newborn] . . . suffer[ed] from . . . decelerations throughout labor with insufficient or no interventions by defendants"; and "were aware that although [the Plaintiff mother and newborn] were experiencing tachysystole and non-reassuring fetal heart rate tracings clearly visible on the monitor, Cervidil was not stopped." *Id*. at 7–8. Additionally, the Plaintiff father and grandmother "observed the nurses' concern in trying to normalize [the newborn's] heart rate tracings"; "were aware that [the newborn] was not receiving the necessary medical care to survive as her mother was not being taken to the [o]perating [r]oom for a . . . C-section"; and "were continuing to suffer because defendants were not giving them the medical attention that they needed . . . ." *Id*. at 8.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) may be based on either (1) the "lack of a cognizable legal theory," or (2) "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). While "detailed factual allegations" are not required, a complaint must include sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

For purposes of ruling on a Rule 12(b)(6) motion to dismiss, a court accepts all allegations of material fact as true and construes the pleadings in the light most favorable to the plaintiffs. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The court need not, however, accept as true pleadings that are no more than legal conclusions or the "formulaic recitation of the elements' of a cause of action." *Iqbal*, 556 U.S. at 663. Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

## DISCUSSION

Defendant argues that Plaintiffs' claim for bystander recovery as to the Plaintiff father and grandmother should be dismissed because the Complaint "do[es] not allege that [Plaintiffs] were able to see the death of the fetus, nor . . . sense or observe it," and such claims under California law "are not cognizable in the context of labor and delivery when the plaintiffs are 'passive spectators' that learned of the fetus'[] death after the fact." Def.'s Mot. (dkt. 18) at 4, 5. Plaintiffs respond that the father and grandmother observed the newborn's "unresponsiveness and . . . death after unsuccessful resuscitation efforts" (Pls.' Opp. (dkt. 20) at 6), while contesting Defendant's use of the word "stillbirth" in the issues section of its Motion. *Compare* Pls.' Response (dkt. 20) at 5 ("Plaintiffs . . . never alleged or conceded that [the newborn] was stillborn.") *with* Def.'s Mot. (dkt. 18) at 2).

Bystander recovery is permitted where a plaintiff is "(1) near the scene of the accident, (2) directly shocked by witnessing the accident, and (3) closely related to the injured third party." *In re Air Crash Disaster Near Cerritos, Cal., Aug. 31, 1986*, 973 F.2d 1490, 1492 (9th Cir. 1992); *see also Dillon v. Legg*, 441 P.2d 912 (Cal. 1968) (establishing modern bystander recovery in California). "Witnessing the accident" means a bystander possessed "sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence." *Justus v. Atchison*, 19 Cal. 3d 564, 582 (1977), *disapproved of by Ochoa v. Superior Ct.,* 39 Cal. 3d 159, 703 P.2d 1 (1985), *and disapproved of by Shalabi v. City of Fontana*, 11 Cal. 5th 842, 489 P.3d 714 (2021). In the context of fetus delivery and death, the element of "sensory and contemporaneous observance" requires more than a bystander's observance of, and presence during, the medical procedure of delivery, emergency measures taken during delivery, expressions of concern by medical staff, prolapse of the umbilical cord, and irregular fetal heart tones; nor is a bystander's presence during the announcement of fetus death, or during "disturbing developments in the delivery room" sufficient. *See id*. at 584–85. Instead, "the event causing injury . . . must itself be one which can be the subject of sensory perception." *Jansen v. Children's Hospital Medical Center*, 31 Cal. App. 3d 22, 24 (1973). Moreover, in the context of a medical malpractice suit, the Supreme Court of California has discussed the extent of a

4

layperson's ability to recovery for NIED upon a bystander:

> In other NIED cases decided after *Thing*, and based on alleged medical negligence, courts have not found a layperson's observation of medical procedures to satisfy the requirement of contemporary awareness of the injury-producing event. This is not to say that a layperson can never perceive medical negligence, or that one who does not perceive it cannot assert a valid claim for NIED. To suggest an extreme example, a layperson who watched as a relative's sound limb was amputated by mistake might well have a valid claim for NIED against the surgeon. Such an accident, and its injury-causing effect, would not lie beyond the plaintiff's understanding awareness. But the same cannot be assumed of medical malpractice generally.

*Bird v. Saenz*, 28 Cal. 4th 910, 917-18 (2002) (emphases added) (internal citation omitted); *see also Mota v. Tri-City Healthcare Dist.,* No. 18-CV-2775-AJB-NLS, 2020 WL 1245372, at *5 (S.D. Cal. Mar. 16, 2020).

In *Justus,* the court denied bystander recovery to two plaintiff fathers alleging medical negligence resulting in fetal death, where, like here, the fathers were present in the delivery room and near to their wives during unsuccessful emergency ministrations. 19 Cal. 3d at 584. Both fathers observed prolapse of the umbilical cord. *Id*. One saw "the manipulation of the fetus with forceps and by hand," and an "attempted Caesarian section," whereas the other observed "the diminution of the fetal heart tones and . . . the failure of the doctor to respond promptly when called." *Id*. The court reasoned that "although each plaintiff was in attendance at the death of the fetus, that event was by its very nature hidden from his contemporaneous perception: he could not see the injury to the victim . . ." *Id*.

In the present case, Plaintiffs fail to state a claim for bystander recovery because, even while granting that the newborn was alive at birth, the Complaint fails to support the contention that the Plaintiff father and grandmother were aware, or could even perceive as laypersons, that any one medical intervention – whether it be the administration of Cervidil, the performance of a C-section, or the performance of emergency resuscitation, etc. – was the injury-producing event as it was occurring. *See Thing v. La Chusa*, 771 P.2d 814, 830 (Cal. 1989) (emphasizing the necessity of a bystander's "presen[ce] at the scene of the accident," "observance of defendant's conduct," and "aware[ness] that [a child] was being injured"); *see also Golstein v. Superior Ct*.,

223 Cal. App. 3d 1415, 1427–28 (1990) (emphasizing "a contemporaneous sensory awareness of the causal connection between the negligent conduct and the resulting injury"); *Bird*, 28 Cal. 4th at 917–18.

Although, as in *Jansen*, the Plaintiff father and grandmother were present during delivery and witnessed decelerations throughout labor, irregular fetal heart tones, and expressions of concern by nurses, observing these events were not the same as contemporaneously perceiving and being aware of an accident (acts or omissions by medical providers) that were understandable by laypersons to have caused the injury or injuries in question. *See Compl.* (dkt. 1) at 7–8; *see also Jansen*, 31 Cal. App. 3d at 24; *see also Bird*, 28 Cal. 4th at 917–18. Moreover, while the Complaint alleges that the Plaintiff father and grandmother were "contemporaneously aware of the injuries and damages sustained by their wife and [newborn]," it fails to identify the actual accident that caused the injury or damage and fails to explain how that accident was contemporaneously perceived and understood. *Compl.* (dkt. 1) at 7.

Plaintiffs state in both the Complaint and Response that the newborn was born alive and continued to present "bilateral breath sounds and chest movement . . . during the course of the resuscitation procedure." Pl.'s Opp. (dkt. 20) at 5; Compl. (dkt. 1) at 5. Yet, the Complaint fails to allege that the Plaintiff father and grandmother were present during, and at the conclusion of, the thirty-seven minutes of resuscitation. *See id*. at 7–8. In fact, Plaintiffs' Response suggests that the Plaintiff father and grandmother were absent from the scene of resuscitation: "[father] and [grandmother]'s shock resulted from them being contemporaneous witnesses and observers of [newborn]'s unresponsiveness and unfortunate death *after unsuccessful resuscitation efforts . . .* [they] observed, *through physicians' actions and talk during resuscitation*, that the baby was dying." Pl.'s Opp. (dkt. 20) at 6 (emphasis added). These statements indicate that the Plaintiff father and grandmother learned of the newborn's death after the fact, and <u>*retrospectively*</u> attributed the newborn's death to certain acts or omissions by medical providers – which is precisely the type of bystander argument rejected in *Justus*:

> [T]he plaintiff husband witnessed certain disturbing developments in
> the delivery room, including expressions of concern by the medical

> staff and use of emergency procedures. Whether the described events constitute negligence is questionable, but they no doubt induced . . . anxiety on the plaintiff's part. Yet his anxiety did not ripen into the disabling shock which resulted from the death of the fetus until he was actually informed of that event by the doctor; prior to that moment, as a passive spectator he had no way of knowing that the fetus had died. In short, *the impact derived not from what he saw and heard during the attempted delivery, but from what he was told after the fact*. As we have seen, however, a shock caused by learning of the accident from others after its occurrence . . . will not support a cause of action under *Dillon*.

19 Cal. 3d at 585 (emphasis added) (internal citation and quotation marks omitted).

While Plaintiffs argue in their Response that "the death of [the newborn] was not hidden from [the Plaintiff father and grandmother's] contemporaneous perception"; that their shock "resulted from them being contemporaneous witnesses and observers of [the newborn's] unresponsiveness and . . . death after unsuccessful resuscitation"; and that the "physicians did not even need to announce the death of [the newborn] since [the Plaintiff father and grandmother] observed, through physicians' actions and talk during resuscitation, that the baby was dying," these statements first surface in Plaintiffs' Response—as opposed to the Complaint—and, even assuming that the Plaintiff father and grandmother were present during resuscitation, Plaintiffs nowhere assert that it was the attempted resuscitation which caused injury to the newborn. Pl.'s Opp. (dkt. 20) at 6; *see also* Compl. (dkt. 1) at 1–10. At bottom, the facts do not sufficiently allege that the Plaintiff father and grandmother "appreciated the harm caused to the point of contemporaneous awareness." *Mota v. Tri-City Healthcare Dist.,* No. 18-CV-2775-AJB-NLS, 2020 WL 1245372, at *6 (S.D. Cal. Mar. 16, 2020) (granting motion to dismiss on NIED upon a bystander where plaintiff alleged that she was outside the operating room and could hear sister scream for help during an emergency C-section performed without anesthesia); *see Bird*, 28 Cal. 4th at 917–18. Therefore, Plaintiffs have not sufficiently pled a claim for NIED upon a bystander.

## CONCLUSION

Plaintiffs' claims for NIED upon a bystander are **DISMISSED** with leave to amend because the Complaint failed to allege that the Plaintiff father and grandmother possessed contemporaneous awareness of the injury-producing *accident* that caused harm. Based on the standards outlined above, it appears highly unlikely that Plaintiff's can cure this defect by way of

amendment; however, out of an abundance of caution, the court will afford Plaintiffs one opportunity to do so. Plaintiffs, therefore, shall have twenty-one days from the date of this order to file an amended Complaint if they so choose. Further, it is **ORDERED** that Plaintiff's request to amend the complaint to move the allegations pled in the second cause of action to the first cause of action is **GRANTED**, and the request for prejudgment interest is **STRICKEN**.

Finally, as to the Notice filed by Plaintiffs (dkt. 28), while the court notes that the Notice is in compliance with L.R. 3-13(a), in that it advises the court of a pending matter proceeding in state court that "involves all or a material part of the same subject matter . . .", to the extent Plaintiffs seek consolidation or a transfer of the state court action to this court, that request is **DENIED**. The court sees no procedural basis for such a request. However, the court will consider coordination efforts to "avoid conflicts, conserve resources and promote an efficient determination of the action," Civ. L.R. 3-13(b)(3)(D), when setting forth the case management order following the initial case management conference.

**IT IS SO ORDERED.**

Dated: September 2, 2022

ROBERT M. ILLMAN
United States Magistrate Judge